UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. _____

UNIVERSAL HANDICRAFT, INC. dba
DEEP SEA COSMETICS, a Florida
corporation,

               Plaintiff,

vs.

HARTFORD CASUALTY INSURANCE
COMPANY, a Connecticut corporation,

               Defendant.

_____

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff Universal Handicraft, Inc. dba Deep Sea Cosmetics ("Universal's") declaratory judgment against Defendant Hartford Casualty Insurance Company ("Hartford") that it had a duty to defend Plaintiff in the counterclaim in the underlying lawsuit captioned: *Universal Handicraft, Inc. v. Parfums Christian Dior, S.A./Parfum Christian Dior, S.A., v. Universal Handicraft, Inc.*, United States District Court, Southern District of Florida (Miami Division), Case No. 1:13-cv-20872-JAL ("the *Dior Counterclaim*") alleges:

### NATURE OF THE ACTION

1.    This is an action seeking a declaratory judgment that Hartford owed Universal a defense in the *Dior Counterclaim*.

### THE PARTIES

2.    Plaintiff, Universal, is a Florida Corporation with its principal executive offices and headquarters in Miami, Florida.

1

3. Defendant, Hartford, is a corporation organized and existing under the laws of Connecticut with its principal offices in Hartford, Connecticut.

## JURISDICTION

4. This is an action for declaratory relief pursuant to 28 U.S.C. § 2201. There is a complete diversity of citizenship between a defendant, and more than $75,000 is controversy in this action. This court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

## VENUE

5. The venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2). This case concerns the duties of Hartford to defend the *Dior Counterclaim* against its insured, Universal. The *Dior Counterclaim* was pending in this district. Both the substantial part of the events on which the claim is based, and the claims pled in the underlying action that triggers the potential for coverage and the Hartford's duty to defend, Universal occurred in this district.

6. The insurance policy issued by Hartford was intended to cover Universal's operations in Florida, including in this district.

7. The venue was also proper in this Court pursuant to 28 U.S.C. § 1391(a)(3). Hartford is authorized to and did issue insurance policies in Florida, including in this district. Hartford has sufficient tax with Florida to be subject to personal jurisdiction in this district.

## GENERAL ALLEGATIONS

### The Hartford Policy

8. Hartford's Commercial General Liability policy, No. 21SBMZJ3573DV. Hartford's policy was effective from January 21, 2013 to January 12, 2014. A copy of the 2013 Hartford policy is attached as **Exhibit "1"**.

9. The Hartford policy promises that Hartford will defend and indemnify Universal from any suit seeking damages for "personal and advertising injury." Hartford's definition of "personal and advertising injury" does not include the offense of "unfair competition" but does include the offenses of (f) "copying in your 'advertisement' a person's or organization's

2

'advertising idea' or 'style of "advertisement" '; and (g) infringement of copyright, slogan or title of a literary or artistic work in your 'advertisement.'"

10. Pursuant to the amendment of the declarations – additional persons or organizations designated as additional insureds, Form SS 123503-12 SEQ No. 001, process date 5/3/13, the following person(s) or organization(s) are added to the Declarations as Named Insureds: Universal Handicraft, Inc. dba Deep Sea Cosmetics, dba Adore Organic Innovation.

11. The Policy provides in relevant part:

> **B. Personal and Advertising Liability**
>
> **1. Insuring Agreement**
>
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.
>
> . . . .
>
> **G. Liability and Medical Expenses Definitions**
>
> . . . .
>
> 1. "Advertisement" means the widespread public dissemination of information or images that has the purpose of inducing the sale of goods, products or services . . .
>
>    . . . .
>
>    b. The Internet, but only that part of a web site that is about goods, products or services for the purpose of inducing the scale of goods, products or services; or
>
>    c. Any other publication that is given widespread public distribution.
>
>    . . . .
>
> 2. **"Advertising Idea" Means Any Idea for an 'Advertisement'"**
>
>    . . . .
>
> 17. Personal and advertising injury" means injury . . . arising out of one or more of the following offenses:
>
>     . . . .
>
>     f. Copying in your "advertisement" a person's or organization's "advertising idea" or "style of advertisement."
>
>     g. Infringement of . . . a literary or artistic work in your "advertisement."

3

## The Underlying Litigation

12. On or about October 29, 2012, Universal filed a trademark application with the U.S. Patent & Trademark Office ("PTO") for the trademark ADORE ORGANIC INNOVATION.

13. On March 12, 2013 Universal filed its complaint for declaratory relief against Defendant Dior seeking an adjudication that Universal's ADORE ORGANIC INNOVATION trademark is not confusingly similar with, and does not infringe Dior's J'ADORE trademark.

14. Following a February 27, 2013 letter from counsel for Dior, which asserted that Universal's ADORE ORGANIC INNOVATION trademark "'is likely to confuse consumers and constitutes an infringement of [Dior's] mark J'ADORE' in violation of U.S. trademark law."

15. The term J'ADORE is French, and in Dior's trademark registrations for J'ADORE, Dior concedes that the term literally translates to "I love," "I adore," or "I worship."

16. Products sold under the J'ADORE mark include Dior's house mark – DIOR – in close proximity to the J'ADORE mark. When J'ADORE appears on Dior's products, the mark generally appears in lower-case letters, often with the letters set so that they do not appear on the same line, and where the letters "d" and "r" appear raised when compared with the other letters.

17. Universal's ADORE ORGANIC INNOVATION is generally presented with the English term ADORE in larger letters and on one line, and the words ORGANIC INNOVATION appearing in somewhat smaller font adjacent to the word ADORE.

18. When the appearance of Universal's ADORE ORGANIC INNOVATION mark is compared with Dior's J'ADORE mark, it becomes apparent that the overall impression created by the two marks is different. The presentation of the two different marks and the products bearing those marks is also different.

19. Dior uses the J'ADORE mark in connection with perfume, eau de toilette and toilet waters, and body milks. Those products differ from the skin care products that Universal sells.

20. The Dior website for J'ADORE products displays an image of Charlize Theron.

4

21.     Products sold under the ADORE ORGANIC INNOVATION mark are sold through a website and in retail stores dedicated to ADORE ORGANIC INNOVATION PRODUCTS. No Dior products are sold in the retail stores or website dedicated to Universal's brand.

22.     Thus, consumers will not find J'ADORE products and ADORE ORGANIC INNOVATION products in the same retail stores.

23.     Universal advertises ADORE ORGANIC INNOVATION products through its website and through salespeople trained to perform demonstrations of the products.

24.     On April 4, 2013 Dior filed an answer and counterclaim against Universal, asserting four causes of action, including two for unfair competition, one for cybersquatting, and two for trademark infringement. A copy of the *Dior Counterclaim* is attached as **Exhibit "2."** The duty to defend sought here under the *Dior Counterclaim* is for the distinct federal unfair competition claim, second claim for relief, 15 U.S.C. § 1125(a) and unfair competition under Florida common law, fourth claim for relief. As each such claim asserts liability, assuming in at least one possible factual scenario, the absence of a claim or trademark infringement.

25.     **Paragraph 12 of the Counterclaim** stated that "Dior markets and sells its fragrance and skin care products under the J'ADORE Marks throughout the United States, including through DIOR boutiques and the DIOR website (http:/www.dior.com), through third-party department stores such Macy's and Bloomingdale's, and through specialty beauty retailers such as Sephora." **Exhibit "2"**

26.     **Paragraph 14 of the Counterclaim** stated that "Dior has devoted and continues to devote significant resources to advertise and market the J'ADORE Marks on or in connection with fragrance and skin care products throughout the United States. For many years, the celebrity actress Charlize Theron has been the face of J'ADORE, and advertisements for J'ADORE products have appeared in print media, on the Internet, and on television. All advertising materials prominently feature the J'ADORE mark. Dior spends millions of dollars

5

annually on advertising, marketing and promotion of its fragrance and skin care products under the J'ADORE Marks." **Exhibit "2"**

27.     **Paragraph 20 of the Counterclaim** alleged that "[l]ong after Dior commenced its use of the J'ADORE Marks in connection with fragrance and skin care products, and long after Dior's J'ADORE trademark registrations had become incontestable, Handicraft began using the marks ADORE and ADORE ORGANIC INNOVATIONS (together, the "Infringing Marks") in connection with its own line of skin care products and related retail store services." **Exhibit "2"**

28.     **Paragraph 24 of the Counterclaim** urged that Universal "continued to advertise and offer under the Infringing Marks skin care products and related goods and services that are identical and/or closely related to those offered by Dior and under its J'ADORE Marks." **Exhibit "2"**

29.     **Paragraph 25 of the Counterclaim** asserted that Universal "is marketing, advertising and promoting its line of skin care products and related goods under the Infringing Marks through a website associated with the domain name, adorecosmetics.com." **Exhibit "2"**

30.     **Paragraph 29 of the Counterclaim** asserted that "[t]he use by Handicraft of the Infringing Marks unfairly and unlawfully wrests from Dior control over its J'ADORE Marks and reputation and is unjustly enriching Handicraft." **Exhibit "2"**

31.     **Paragraph 46 of the Counterclaim** stated that Handicraft has "registered, trafficked in, and/or used the adorecosmetics.com domain name with the bad faith intent to profit from the J'ADORE Marks" [and] and "the adorecosmetics.com domain name has been used by Handicraft with the bad faith intent to reap the benefit of the goodwill in the J'ADORE Marks, to divert consumers to the adorecomsetics.com domain name for their own commercial gain, and to otherwise profit from unauthorized use of the J'ADORE Marks." **Exhibit "2"**

32.     **Paragraph 51 of the Counterclaim** alleged that "Handicraft's use of the Infringing Marks in connection with skin care products and related goods and services is likely to confuse the public as to the origin, source or sponsorship of Handicraft's goods and services,

6

or to cause mistake or to deceive the public into believing that Handicraft's goods and services are authorized, sponsored, endorsed by, licensed by, or affiliated with Dior, in violation of Dior's rights in the J'ADORE Marks under the common law of the state of Florida.  **Exhibit "2"**

33.     **Paragraph 52 of the Counterclaim** further stated, "By misappropriating and trading upon the goodwill and business reputation represented by the J'ADORE Marks, Handicraft has been and, unless enjoined by this Court, will continue to be unjustly enriched at Dior's expense." **Exhibit "2"**

34.     To remedy the conduct alleged, including Count II for Lanham Act violations and the Florida common law unfair competition Count IV, the **Counterclaim** seeks injunctive relief as part of the prayer against Universal:

> (a) . . . in connection with the advertising, promotion, manufacture . . . displaying . . . or offering for sale of skin care, cosmetic or fragrance products or in connection with any related goods or services, including but not limited to retail store services;
>
> (b) using the J'ADORE Marks . . or any other simulation, reproduction, copy, colorable imitation or confusingly similar variation of the mark J'ADORE . . . in connection with the advertising, promotion . . . displaying . . . or offering for sale any skin care, cosmetic or fragrance products, and any related goods or services, including but not limited to retail store services;
>
> (d) conducting any activities in the United States that relate to, refer to or concern the advertising, promotion, . . . displaying . . . offering for sale of skin care, cosmetic or fragrance products, or related goods or services . . . that includes J'ADORE in whole or in part. . . .
>
> (f) engaging in any other activity constituting unfair competition with Dior . . . . (i) using any domain name or metatag that includes in whole or in part the term 'J'ADORE or 'ADORE' or any formative thereof in connection with a web site that advertises, promotes, markets, displays, . . . offers for sale or otherwise refers to skin care, cosmetic or fragrance products, or any related goods or services . . . ." **Exhibit "2"**

35.     **The Counterclaim** also sought specifically "destruction of 'promotional and marketing materials, advertising . . ." **Exhibit "2"**

**Notice To Hartford And Hartford's Wrongful Denial Of Coverage**

7

36. In May of 2013, following the filing of the *Dior Counterclaim*, Universal promptly tendered to Hartford, which following completion of its review of the facts alleged in the counterclaim, denied a defense in its June 6, 2013 letter, a copy of Hartford's June 6, 2013 denial letter is attached as **Exhibit "3."** It claimed (without analysis or citation to authority) that there was "no personal and advertising injury" coverage following the enumeration of all the listed offenses (a) through (h). It then made unsupportable statement that: "it is apparent that the counterclaims did not seek any damages resulting from the commission of any of these enumerated offenses." Hartford's denial letter went on to state that "the facts alleged in the complaint make clear that the only damages sought are as a result of trademark infringement." Neither statement is true – the express assertion of unfair competition claims which assert liability whether or not trademark infringement is ever proven, reveal the shortcomings of these statements.

37. The denial letter also referenced intellectual property exclusion (7). By its own terms, it does not apply to claims for unfair competition which assert neither a violation of non-infringement of intellectual property rights. It also ignores claims for "infringement of title" of any literary or artistic work which expressly fall outside the scope of exclusion (7) for intellectual property.

38. Looking independently at the federal cybersquatting statute, Hartford also urged that these claims fell within exclusion 10, which provides "this insurance does not apply to 'personal and advertising injury' arising out of the unauthorized use of another's name or product in your email address, domain name or metatags, or any other similar tactics to mislead another's potential customers." Hartford does not explain, however, how the use of the terms ADORE ORGANIC INNOVATION which are never referenced in the denial letter, necessarily duplicate J'ADORE as applied to distinct products and distinct media markets with distinct product focuses.

### Settlement of Underlying Action

39. Following the denial of defense the underlying action was resolved by a co-existence agreement between the parties about the payment of any damages leading only the issue of unpaid defense fees from the initiation of the counterclaim suit outstanding. The *Dior Counterclaim's* alleged facts that trigger Hartford's duty to defend under several distinct "personal and advertising injury" offenses – (f) and (g).

### "PERSONAL AND ADVERTISING INJURY COVERAGE"

### Offense (f) Infringement of Slogan/Literary or Artistic Falls Within an Express Exception to Exclusion (7) for Intellectual Property

40. Hartford's policy defines "personal and advertising injury" to include injury arising out of the offense of (f) – "Copying in your 'advertisement' a person or organization's 'advertising idea' or style of 'advertisement.'" Hartford's denial letter does not explain why this offense is not factually implicated by the unfair competition allegations against its insured, Universal. Offense (f) contains three elements: (1) Copying a person's or organization's (2) "advertising idea" or style of "advertisement," and (3) in your "advertisement." Each element is met by the assertions in the *Dior Counterclaim.*

### Element One – An "Advertising Idea" is Alleged

41. The Harford policy defines the term "advertising idea" broadly as "any idea for an 'advertisement.'" Absent that definition, courts applying Florida law have defined the term (and a reasonable insured in Universal's position would have understood the term), especially in light of Hartford's broad definition, to include "any idea or concept related to the promotion of a product to the public." **Paragraph 51 of the Counterclaim** reveals one such "advertising idea," consisting of public statements that "Handicraft's goods and services are authorized, sponsored, endorsed, licensed by, or affiliated with Dior, in violation of Dior's rights in the J'ADORE Marks under the common law of the State of Florida." **Exhibit "2"**

42. The "advertising idea" element is satisfied by the *Dior Counterclaim's* factual allegations of public statements about its products intended to induce the public to buy its

9

products, led the public to misperceive that those products were sponsored, endorsed, licensed by or affiliated with Dior, when in fact Dior had no such relationship with Universal.

### Element Two – "Copying" a Person's or Organization's" is Alleged

43. The "advertising idea" ADORE is alleged by Dior to be its and solely controlled by either its trademark rights or its broader common law rights as federalized by the Lanham Act in 15 U.S.C. § 1125 (a) to dissuade the alleged affiliated entities from obtaining benefits through its association with the ADORE Mark.

44. Thus, **Paragraph 24 of the Counterclaim** urged that "[Universal] continued to advertise and offer under the Infringing Marks skin care products and related goods and services that are identical and/or closely related to those offered by Dior and under its J'ADORE Marks." **Counterclaim ¶29** also asserted that the "[t]he use by Handicraft of the Infringing Marks unfairly and unlawfully wrests from Dior control over its J'ADORE Marks and reputation and is unjustly enriching Handicraft."

### Element Three – In Your "Advertisement"

45. "Advertisement" is defined as the widespread public dissemination of information or images that has the purpose of inducing the sales of goods, products or services through: "**a.** [various media]; **b.** The Internet . . . **c.** any other publication that is given widespread public distribution."

46. The same allegations in **Paragraph 20 of the Counterclaim** that implicate coverage for copying Dior's J'ADORE advertising idea also apply to its style of "advertisement" in light of Dior's allegations that:

> [l]ong after Dior commenced its use of the J'ADORE Marks in connection with fragrance and skin care products, and long after Dior's J'ADORE trademark registrations had become incontestable, Handicraft began using the marks ADORE and ADORE ORGANIC INNOVATIONS (together, the "Infringing Marks") in connection with its own line of skin care products and related retail store services." **Exhibit "2"**

47. In **Paragraph 25 of the Counterclaim** Dior claimed that Universal "is marketing, advertising and promoting its line of skin care products and related goods under the

10

Infringing Marks through a website associated with the domain name, adorecosmetics.com."

**Exhibit "2"**

48. The conduct alleged, including Count II for Lanham Act violations and the Florida common law unfair competition Count IV, seeks injunctive relief as part of the prayer against Universal:

> (a) . . . in connection with the advertising, promotion, manufacture . . . displaying . . . or offering for sale of skin care, cosmetic or fragrance products or in connection with any related goods or services, including but not limited to retail store services;
>
> (b) using the J'ADORE Marks . .  or any other simulation, reproduction, copy, colorable imitation or confusingly similar variation of the mark J'ADORE . . . in connection with the advertising, promotion . . . displaying . . . or offering for sale any skin care, cosmetic or fragrance products, and any related goods or services, including but not limited to retail store services;
>
> (d) conducting any activities in the United States that relate to, refer to or concern the advertising, promotion, . . . displaying . . . offering for sale of skin care, cosmetic or fragrance products, or related goods or services . . . that includes J'ADORE in whole or in part. . . .
>
> (f) engaging in any other activity constituting unfair competition with Dior . . . . (i) using any domain name or metatag that includes in whole or in part the term 'J'ADORE or 'ADORE' or any formative thereof in connection with a web site that advertises, promotes, markets, displays, . . . offers for sale or otherwise refers to skin care, cosmetic or fragrance products, or any related goods or services . . . ."

49. Dior also sought specifically "destruction of 'promotional and marketing materials, advertisements . . . ."

**Offense (g) "Infringement . . . Of . . . Title Of Any Literary Or Artistic Work in Your 'Advertisement'" Falls Within An Express Exception To The Exclusion (7) For Intellectual Property**

50. Hartford's policy defines "personal and advertising injury" to include injury arising out of offense (g) – "infringement . . . of . . . title of any literary or artistic work." Hartford's denial letter does not explain why this offense is not factually implicated by the unfair

11

competition allegations against its insured, Universal.  Offense (g) contains three elements:  (1) infringement of (2) title of any literary or artistic work; (3) in your "advertisement."

### Element One – Title of Any Literary or Artistic Work Is Alleged

51.   Hartford does not define the term "literary or artistic title" in its policy.  On January 1, 2009, B. Grosset published Jean Desbordes' novel titled *j'adore* with a forward by his co-author, Jean Cocteau.  This tome is a literary work and predated both the *Dior Counterclaim* and the issuance of Hartford's policy to Universal.  On October 4, 2011, Isabelle Lafleche had her novel J'ADORE published followed by J'ADORE Paris on August 10, 2013.[1]

52.   The trademark registrations of Dior suggest that the term J'ADORE is simply a French word meaning "I adore," "I worship" or "I love."  J'ADORE has been the title of French, as well as English, books which readily meet the definition of a literary, or artistic title.  In this context, J'ADORE is an artistic title because it is an acronym referenced English concepts both compact and adding the nuance of French language as its source with cache from that association, upon which Dior claims Universal improperly treads by its use of adore in its own product designation.  Should Universal have chosen the phrase Handicraft Organic Innovation or Universal Organic Innovation, none of the associations referenced by Dior would have arisen.  There would be no question that a literary or artistic title would have been taken.

### Element Two – Infringement Of Is Alleged

53.   The title of any literary or artistic work is asserted as a basis for liability where it is taken from the claimant and that is asserted in the trademark infringement claims which are subject to an exception for the same offense (g) allegations, as well as the unfair competition claims which also encompass liability based on the same asserted offense (g), which is within the scope of that coverage.

---

[1] Request for Judicial Notice in Support of Motion for Summary Judgment.

### Element Three – In Your "Advertisement"

54. "Advertisement" is met as the trademark and unfair competition allegations all allege use of the J'ADORE moniker in connection with the asserted claims of liability toward "trademark infringement" and "unfair competition" alleged above.

### NO EXCLUSIONS BAR A DEFENSE
### Exclusion (7) for (Intellectual Property) Excepts
### Conduct Covered Within Offenses (f) or (g) Alleged Here

55. Both offenses (f) and (g) are implicated for the trademark infringement, as well as unfair competition claims. The last count for cybersquatting is not an intellectual property claim as the IP exclusion uses that term, but a form of unfair competition with statutory elements designed to publish statutory violations.

56. The Amendment of Exclusions and Definitions "Personal and Advertising Injury," form SS 41 62 06 11 presents no impediment to potential coverage. It provides that:

> **p. Personal and Advertising Injury:**
>
> **(7) (a)** arising out of any . . . violation of any intellectual property right, such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity; . . .
> . . . .
> However, this exclusion does not apply if the only allegation in the claim or "suit" involving any intellectual property right is limited to:
>
> **(1)** Infringement, in your "advertisement", of:
> . . . .
> **(c)** Title of any literary or artistic work; or
>
> **(2)** Copying, in your "advertisement", a person's or organization's "advertising idea" or style of "advertisement."

### Exclusion (10) For (Email Addresses) Does Not Apply to a Website Address

57. Nor is Exclusion 10, for "unauthorized use of name or product in email," implicated. It provides:

> **(10)** Arising out of the unauthorized use of another's name or production in your e-mail address, domain name or

13

Case 1:14-cv-20305-JAL   Document 1   Entered on FLSD Docket 01/27/2014   Page 14 of 17

metatags, or any other similar tactics to mislead another's potential customers;

58. The website name used by Universal to promote its ADORE ORGANIC INNOVATION product, adorecosmetics.com, bears no similarity to Dior's website, Dior.com. Moreover, no specific distinct J'ADORE website was created by Dior in connection with its marketing of its J'ADORE mark line of clones and perfumes, skin care products.

59. Exclusion (10) is not addressed to Universal's website address, but limited to email, domain name and metatag despite the obvious existence of websites as of the date of adoption of this exclusion. These three enumerated locations are very specific. A website is not included among them. Furthermore, if the exclusion were meant to include websites generally it would be odd to enumerate two constituent elements of the website (its domain name and metatags), but to neglect to mention the website itself. To conclude otherwise would allow the "similar tactics" language to swallow the narrow language used in the exclusion and turn it into a catch-all exclusion for the use on the internet in any way is material belonging to another.

60. While Dior admits that it has for many years used the celebrity actress Charlize Theron as the face of J'ADORE in the advertisements for J'ADORE products, appearing in print media on the internet and on television, no similar spokesperson used by Universal nor its products associated with any female actress and celebrity, much less one whose appearance is reminiscent of Charlize Theron. Thus, Exclusion (10) cannot bar a defense under any of the asserted claims, including that for alleged cybersuqatting.

## COUNT I

### Declaratory Relief by (By Universal Against Hartford)

61. Plaintiffs incorporate each and every allegation set forth in the above paragraphs as though fully alleged herein.

62. By issuing the Hartford policy, Hartford agreed to defend Universal in suits seeking damages for "personal and advertising injury" as defined in Hartford's policy. The Dior counterclaim seeks damages allegedly based on facts that trigger the Hartford policies covered in "personal and advertising injury" offense (f) and (g). Such offenses are also with exceptions to

metatags, or any other similar tactics to mislead another's potential customers;

58. The website name used by Universal to promote its ADORE ORGANIC INNOVATION product, adorecosmetics.com, bears no similarity to Dior's website, Dior.com. Moreover, no specific distinct J'ADORE website was created by Dior in connection with its marketing of its J'ADORE mark line of clones and perfumes, skin care products.

59. Exclusion (10) is not addressed to Universal's website address, but limited to email, domain name and metatag despite the obvious existence of websites as of the date of adoption of this exclusion. These three enumerated locations are very specific. A website is not included among them. Furthermore, if the exclusion were meant to include websites generally it would be odd to enumerate two constituent elements of the website (its domain name and metatags), but to neglect to mention the website itself. To conclude otherwise would allow the "similar tactics" language to swallow the narrow language used in the exclusion and turn it into a catch-all exclusion for the use on the internet in any way is material belonging to another.

60. While Dior admits that it has for many years used the celebrity actress Charlize Theron as the face of J'ADORE in the advertisements for J'ADORE products, appearing in print media on the internet and on television, no similar spokesperson used by Universal nor its products associated with any female actress and celebrity, much less one whose appearance is reminiscent of Charlize Theron. Thus, Exclusion (10) cannot bar a defense under any of the asserted claims, including that for alleged cybersuqatting.

## COUNT I

### Declaratory Relief by (By Universal Against Hartford)

61. Plaintiffs incorporate each and every allegation set forth in the above paragraphs as though fully alleged herein.

62. By issuing the Hartford policy, Hartford agreed to defend Universal in suits seeking damages for "personal and advertising injury" as defined in Hartford's policy. The Dior counterclaim seeks damages allegedly based on facts that trigger the Hartford policies covered in "personal and advertising injury" offense (f) and (g). Such offenses are also with exceptions to

the intellectual property Exclusion (7) and fall outside the scope of Exclusion (10), thus compelling Hartford to have defended its insured, Universal, in the *Dior Counterclaim.*

63. Nevertheless, Hartford refused to defend Universal basing its denial on conclusionary fact allegations without citation to any legal authority, and without even designating which offenses for "personal and advertising injury" might have been implicated, thereby failing to properly designate how the exclusion cites were applicable to the potentially implicated claims.

64. An actual bona fide controversy exists between Universal, on the one hand, and Hartford on the other, as to whether Hartford had a duty to defend Universal in the Dior Counterclaim.

65. Under applicable Florida law, the court can only look at the Counterclaim and the pertinent policy issued by Hartford in evaluating a duty to defend, as did Hartford in denying coverage.

66. The court may adjudicate, as a matter of law, why these facts in the counterclaim, when viewed in light of applicable Florida law, compel a defense and so finding under Florida law, award the reasonable attorneys' fees incurred by Universal in seeking recovery, via this declaratory relief action against Hartford for its attorneys' fees pursuant to Florida Statute 627.427 and prejudgment interest under Florida Stat. Ch. 5503 and 6807.1.

WHEREFORE, Plaintiff Universal prays that this court enter judgment in its favor and against Hartford as follows:

1. Finding and declaring that Hartford had, and has a duty to defend Universal in the Dior Counterclaim;

2. Determining the amount of fees incurred against liability in connection with that defense owed by Hartford for the Dior Counterclaim;

3. Awarding damages, prejudgment interest, costs and attorneys' fees incurred in this suit pursuant to Florida Statute §627.428, as otherwise permitted by law pursuant to Florida Statute Ch. 5503 and 6807.1.

    4.    Awarding such other and further relief as the Court may deem just and proper.

Dated: January 27, 2014                Respectfully submitted,

_____
David H. Charlip, B.C.S.
CHARLIP LAW GROUP, L.C.
17501 Biscayne Boulevard, Suite 510
Aventura, Florida 33160
Telephone: (305) 354-9313
Facsimile: (305) 354-9314
dcharlip@charliplawgroup.com

David A. Gauntlett, Esq. *[Pro Hac Vice Pending]*
GAUNTLETT & ASSOCIATES
18400 Von Karman, Suite 300
Irvine, California 92612
Telephone: (949) 553-1010
Facsimile: (949) 553-2050
info@gauntlettlaw.com

Attorneys for Plaintiff Universal Handicraft, Inc.
dba Deep Sea Cosmetics

16

## **EXHIBITS TO COMPLAINT**

**EXHIBIT 1**   --   Hartford's Commercial General Liability Policy No. 21SBMZJ3573DV

**EXHIBIT 2**   --   The *Dior* Counterclaim filed on April 4, 2013

**EXHIBIT 3**   --   Hartford's denial of defense letter dated June 6, 2013