# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### Case No. 14-20305-LENARD-O'SULLIVAN

UNIVERSAL HANDICRAFT, INC. dba
DEEP SEA COSMETICS, a Florida
corporation,

        Plaintiff,

vs.

HARTFORD CASUALTY INSURANCE
COMPANY, a Connecticut corporation,

        Defendant.

_____

## <u>PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON DEFENDANT'S DUTY TO DEFEND</u>

### <u>Oral Argument Requested</u>

## TABLE OF CONTENTS

Page

I. PRELIMINARY ISSUES ....................................................................................... 1

   A. Summary of Argument ........................................................................... 1

   B. The Underlying Litigation ...................................................................... 2

      1. The Universal Complaint ............................................................ 2

      2. The Dior Counterclaim ............................................................... 2

   C. Hartford's Defense Obligation ............................................................... 2

      1. Pertinent Policy Language .......................................................... 2

      2. Hartford's Denial of a Defense .................................................. 3

      3. Settlement of the Underlying Action .......................................... 4

D.      Florida Law Governs This Dispute ..................................................4

E.      Offense-Based Coverage Is Subject to Special Rules Construction .................4

II.     OFFENSE (f) FOR "COPYING IN YOUR 'ADVERTISEMENT' A[N] . . . ORGANIZATION'S . . . ADVERTISING IDEA" ..........................................6

A.      Coverage Under Offense (f) is Subject to a Three Part Test ............................6

B.      Each of the Elements of the Three Part Test Are Met ....................................6

        1.      Element One – An "Advertising Idea" is Alleged ..................................6

        2.      Element Two – "Copying" a "Person's or Organization's" Advertising Idea is Alleged ........................................................7

        3.      Element Three – "In Your 'Advertisement'" .........................................8

III.    OFFENSE (g) "INFRINGEMENT . . . OF . . . TITLE OF ANY LITERARY OR ARTISTIC WORK IN YOUR 'ADVERTISEMENT'" FALLS WITHIN AN   EXPRESS   EXCEPTION   TO   THE   EXCLUSION   (7)   FOR INTELLECTUAL PROPERTY ..................................................11

A.      Coverage is Subject to a Three Part Test ....................................................11

B.      Each of the Elements of the Three Part Test Are Met ....................................11

        1.      Element One – Title Of Any Literary Or Artistic Work Is Alleged ...............................................................11

                a.      A Literary Title is Asserted ...................................... 11

                b.      An Artistic Title is Asserted .................................... 16

        2.      Element Two – "Infringement Of" Is Alleged ....................................16

        3.      Element Three – In Your "Advertisement" ...........................................17

IV.     NO EXCLUSIONS BAR A DEFENSE ..................................................17

A.      Exclusion (7) for (Intellectual Property) Excepts Conduct Covered Within Offenses (f) or (g) Alleged Here ..............................................17

B.      Exclusion (10) For (Email Addresses) Does Not Apply to a Website Address ..................................................................18

V.      CONCLUSION ..................................................................19

## TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*A Touch of Class Imports, Ltd. v. Aetna Cas. & Sur. Co.*,
901 F. Supp. 175 (S.D.N.Y. 1995) ...................................................................12, 18

*Adolfo House Distrib. Corp. v. Travelers Prop. & Cas. Ins. Co.*,
165 F. Supp. 2d 1332 (S.D. Fla. 2001) ..................................................................5

*Advance Magazine Publishers Inc. v. Vogue Int'l*,
123 F. Supp. 2d 790 (D.N.J. 2000) ......................................................................13

*Am. Emp'rs Ins. Co. v. DeLorme Publ'g Co.*,
39 F. Supp. 2d 64 (D. Me. 1999) .........................................................................11

*Cent. Mut. Ins. Co. v. StunFence, Inc.*,
292 F. Supp. 2d 1072 (N.D. Ill. 2003) .................................................................10

*Curtis-Universal, Inc. v. Sheboygan Emerg. Med. Servs., Inc.*,
43 F.3d (7th Cir. (Wis.) 1994) ...............................................................................6

*EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*,
228 F.3d 56 (2d Cir. 2000) ...................................................................................13

*Girl Scouts of U. S. of Am. v. Personality Posters Mfg. Co.*,
304 F. Supp. 1228 (S.D.N.Y. 1969) .....................................................................13

*Houbigant, Inc. v. Fed. Ins. Co.*,
374 F.3d 192 (3d Cir. (N.J.) 2004) ..................................................................12, 15

*Hyman v. Nationwide Mut. Fire Ins. Co.*,
304 F.3d 1179 (11th Cir. (Fla.) 2002) ...................................................................6

*Jones v. Weibrecht*,
901 F.2d 17 (2d Cir. 1990) .....................................................................................4

*Kelly-Brown v. Winfrey*,
717 F.3d 295 (2d Cir. 2013) .......................................................................12, 13, 18

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
313 U.S. 487 (1941) ................................................................................................4

*Lime Tree Vill. Cmty. Club Ass'n, Inc. v. State Farm Gen. Ins. Co.*,
980 F.2d 1402 (11th Cir. (Fla.) 1993) ...................................................................6

*Mid-Continent Cas. Co. v. Basdeo*,
    742 F. Supp. 2d 1293 (S.D. Fla. 2010) *aff'd*, 477 F. App'x 702 (11th Cir. 2012) ...................5

*Native Am. Arts, Inc. v. Hartford Cas. Ins. Co.*,
    435 F.3d 729 (7th Cir. 2006) .............................................................15

*Norfab Corp. v. Travelers Ind. Co.*,
    555 F. Supp. 2d 505 (E.D. Pa. 2008) ..............................................11, 14

*Pension Trust Fund v. Federal Ins. Co.*,
    307 F.3d 944 (9th Cir. (Cal.) 2002) ....................................................5

*R.C. Bigelow, Inc. v. Liberty Mutual Ins. Co.*,
    287 F.3d 242 (2d Cir. (Conn.) 2002) ..................................................10

*Shapiro v. Associated Int'l Ins. Co.*,
    899 F.2d 1116 (11th Cir. (Fla.) 1990) .................................................4

*Sinni v. Scottsdale Ins. Co.*,
    676 F. Supp. 2d 1319 (M.D. Fla. 2009).................................................5

*St. Luke's Cataract & Laser Inst., P.A. v. Zurich Am. Ins. Co.*,
    506 F. App'x 970 (11th Cir. 2013).....................................................19

*State Farm Fire & Cas. Co. v. Steinberg*,
    393 F.3d 1226 (11th Cir. (Fla.) 2004) .................................................9

*Wyatt Earp Enterprises, Inc. v. Sackman, Inc.*,
    157 F. Supp. 621 (S.D.N.Y. 1958) .....................................................13


## STATE CASES

*Acuity v. Bagadia*,
    750 N.W.2d 817 (Wis. 2008)..........................................................13

*Aearo Corp. v. American Int'l Specialty Lines Ins. Co.*,
    676 F. Supp. 2d 738 (S.D. Ind. 2009)..................................................3

*Air Eng'g, Inc. v. Indus. Air Power, LLC*,
    346 Wis.2d 9 (Wis. Ct. App. 2013) ....................................................9

*Atlantic Mut. Ins. Co. v. J. Lamb, Inc.*,
    100 Cal. App. 4th 1017 (2002) .........................................................5

*Bear Wolf, Inc. v. Hartford Ins. Co. of Se.*,
    819 So. 2d 818 (Fla. Dist. Ct. App. 2002) ............................................10

*Bishop v. Florida Specialty Paint Co.,*
   389 So. 2d 999 (Fla. 1980) ...................................................................................4

*Carnival Brands, Inc. v. Am. Guar. & Liab. Ins. Co.,*
   726 So. 2d 496 (La. Ct. App. 1999)......................................................................12

*Dadeland Depot, Inc. v. St. Paul Fire and Marine Ins. Co.,*
   945 So.2d 1216 (Fla. 2006) ................................................................................11

*Fireman's Fund Ins. Co. of Wis. v. Bradley Corp.,*
   660 N.W.2d 666 (Wis. 2003)...............................................................................18

*General Cas. Co. of Wis. v. Wozniak Travel, Inc.,*
   762 N.W.2d 572 (Minn. 2009) ..............................................................................8

*In re Ancillary Receivership of Reliance Ins. Co.,*
   55 A.D.3d 43, 863 N.Y.S.2d 415 (2008) *aff'd,* 12 N.Y.3d 725, 904 N.E.2d 495 (2009)........18

*McCormack Baron Mgmt. Servs., Inc. v. American Guar. & Liab. Ins. Co.,*
   989 S.W.2d 168 (Mo. 1999) .................................................................................5

*Super Duper Inc. v. Pa. Nat. Mut. Cas. Ins. Co.,*
   683 S.E.2d 792 (S.C. 2009) ................................................................................12

*Ticor Title Ins. Co. v. University Creek, Inc.,*
   767 F. Supp. 1127 (M.D. Fla. 1991)......................................................................5

*Town of Massena v. Healthcare Underwriters Mut. Ins. Co.,*
   834 N.Y.S.2d 736 (3d Dep't 2007)........................................................................14

*Westfield Cos. v. O.K.L. Can Line,*
   804 N.E.2d 45 (Ohio Ct. App. 2003) .....................................................................9

**DOCKETED CASES**

*Blue Man Prods., Inc.* v. *Tarmann,*
   2005 WL 2034544 (Trademark Tr. & App. Bd. Aug. 18, 2005).............................................13

*Finger Furniture Co. v. Travelers Indem. Co.,*
   No. H-01-2797, 2002 WL 32113755 (S.D. Tex. (Houston Div.) Aug. 19, 2002)..................18

*Gallina v. Comm. & Indus. Ins.,*
   No. 8:06-CV-1529-T-27EAJ, 2008 WL 4491539 (M.D. Fla. Sept. 30, 2008)........................4

*Guenther v. Novartis Pharm. Corp.,*
   No. 8:06-CV-1529-6:08-CV-456-ORL-31, 2013 WL 1225391, at *2 (M.D. Fla. Mar.
   27, 2013) ................................................................................................4

**FEDERAL RULES AND STATUTES**

Fed. R. Civ. P. 7(a)(1) ............................................................................................ 11

Fed. R. Civ. P. 8(a) ................................................................................................ 11

Lanham Act in 15 U.S.C. § 1125 (a) ........................................................................ 7

**OTHER AUTHORITIES**

1, 2 MCCARTHY §§ 7:20, 10:4.10 ........................................................................... 13

2 MCCARTHY § 10:4.10 nn. .................................................................................... 12

MCCARTHY § 33:7 n. 4 ........................................................................................... 12

RANDOM HOUSE UNABRIDGED DICTIONARY 2nd Ed. ........................................... 7, 12

I.      **PRELIMINARY ISSUES**

A.      **Summary of Argument**

This is an insurance coverage dispute.  Plaintiff, Handicraft, Inc. dba Deep Sea Cosmetics ("Universal") seeks a Declaration that Defendant Hartford Casualty Insurance Company ("Hartford") owed it a defense in *Parfums Christian Dior, S.A. v. Universal Handicraft, Inc.*, United Stated District Court, Southern District of Florida, Case No. 13-cv-20872-Leonard/O'Sullivan (the "*Dior Counterclaim*") which it improperly denied.

The *Dior Counterclaim* alleges that Universal's public statements in its marketing materials and promotional activities, including advertisements that supported relief for unfair competition under both federal and Florida common law, were premised on Universal allegedly deceiving the public that its products were either authorized, sponsored, endorsed, licensed by or affiliated with Dior.  **[Plaintiff's Statement of Material Facts ("SMF") ¶¶25-33]**

The alleged advertisements included online promotion through Universal's website and in dedicated stores in shopping malls of its product operating under its registered trademark ADORE ORGANIC INNOVATION, but not as Dior's J'ADORE product through retailers. **[SMF ¶¶19-21]**

"Personal and advertising injury" coverage encompasses two distinct offenses: (f) "copying in your 'advertisement' [an] . . . organization's 'advertising idea' . . . and (g) "infringement of . . . title of literary or artistic work in your 'advertisement.'"  **[SMF ¶5]**  Each offense is implicated by the Dior counterclaim as Dior's trademark J'ADORE is the quintessential "advertising idea," as well as the "title of literary or artistic work," which it accuses Universal of copying in the Latter's advertisement.

The unfair competition claims that potentially implicate offenses (f) and (g) do not fall within Exclusion 7 for (intellectual property) because offenses (f) or (g) claims fall within an express exception to that exclusion.  Similarly, Exclusion (10) (email addresses) is not implicated because Universal's adorecosmetics.com website is neither a metatag, email address, or domain name for Dior as Dior promotes it J'ADORE product through its Dior.com website.

Nor is a website address mentioned within this limited metatag domain/domain name exclusion. Therefore, it cannot be read in such a limited manner under applicable Florida law.

## B.     The Underlying Litigation

### 1.     The Universal Complaint

> 12.     On or about October 29, 2012, Universal filed a trademark application with the U.S. Patent & Trademark Office ("PTO") for the trademark ADORE ORGANIC INNOVATION. **[SMF ¶11]**

> 13.     Products bearing the ADORE ORGANIC INNOVATION are sold on-line through Universal's website, and through dedicated stores in shopping malls operating under the mark ADORE ORGANIC INNOVATION . . . .  **[SMF ¶19]**

### 2.     The Dior Counterclaim

The Dior Counterclaim alleged in pertinent part:

> 14.     Dior has devoted and continues to devote significant resources to advertise and market the J'ADORE Marks on or in connection with fragrance and skin care products throughout the United States. For many years, the celebrity actress Charlize Theron has been the face of J'ADORE, and advertisements for J'ADORE products have appeared in print media, on the Internet, and on television. All advertising materials prominently feature the J'ADORE mark. Dior spends millions of dollars annually on advertising, marketing and promotion of its fragrance and skin care products under the J'ADORE Marks. **[SMF ¶26]**

## C.     Hartford's Defense Obligation

### 1.     Pertinent Policy Language

The Policy provides in relevant part:

#### B.  Personal and Advertising Liability

##### 1.  Insuring Agreement

> a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.

. . . .

#### G.  Liability and Medical Expenses Definitions

. . . .

1. "Advertisement" means the widespread public dissemination of information or images that has the purpose of inducing the sale of goods, products or services . . .

. . . .

   b. The Internet, but only that part of a web site that is about goods, products or services for the purpose of inducing the scale of goods, products or services; or

   c. Any other publication that is given widespread public distribution.

. . . .

2. **"Advertising Idea" Means Any Idea for an 'Advertisement'"**

. . . .

17. Personal and advertising injury" means injury . . . arising out of one or more of the following offenses:

   . . . .

   f. Copying in your "advertisement" a person's or organization's "advertising idea" or "style of advertisement."

   g. Infringement of . . . a literary or artistic work in your "advertisement." **[SMF ¶7]**

### 2.   Hartford's Denial of a Defense

Following a timely tender of a defense, Hartford denied a defense claiming that no "personal or advertising injury" offense was alleged. Without analysis or citation to case law, Hartford claimed that Exclusions (7) and (10) barred a defense because all asserted claims were based upon Dior's assertion of its J'ADORE trademark. **[SMF ¶¶36-39]**

Neither statement is accurate – the express assertion of unfair competition claims can establish liability whether or not trademark infringement is ever proven, revealing the shortcomings of these statements.[1]

---

[1]*Aearo Corp. v. American Int'l Specialty Lines Ins. Co.*, 676 F. Supp. 2d 738, 748 (S.D. Ind. 2009) ("Climb Tech [the insured] could have recovered on its trademark infringement claims without proving that Aearo acted with knowledge of falsity. . . . The majority of those courts have determined that the exclusion does not apply if the plaintiff in the underlying lawsuit could have succeeded without proving intentional misconduct. See *Orlando Nightclub Enterprises, Inc. v. James River Ins. Co.,* 2007 WL 4247875, at *8 (M.D.Fla. Nov.30, 2007) (collecting cases).").

### 3.    Settlement of the Underlying Action

The *Dior Counterclaim* and *Universal Complaint* against Dior (collectively "the Underlying Action") has now been resolved.   Following Hartford's denial of defense, the Underlying Action was resolved by the parties entering a co-existence agreement between the parties about the payment of any damages, leaving only the issue of unpaid defense fees from the initiation of the counterclaim suit outstanding.  **[SMF ¶40-41]**

### D.    Florida Law Governs This Dispute

Venue is proper in this district.[2]   Federal courts, sitting in diversity, apply the choice of law principles of the forum state, namely, Florida.[3]   Conflict of law analysis is issue by issue under the applicable "depecage" doctrine in Florida.[4]   *Lex loci contractus* is the rule used to resolve insurance coverage disputes as they are a form of contract action.[5]

Florida law applies to the coverage claims against Universal,[6] as the Hartford policy was issued through Miami Beach Florida brokers to Universal at its principal place of business in Miami Beach, Florida.  **[SMF ¶1]**

### E.    Offense-Based Coverage Is Subject to Special Rules Construction

Five propositions of law are germane under Florida law to determine potential coverage:

**First**, policy language cannot be redrafted by the court.

---

[2]*Jones v. Weibrecht*, 901 F.2d 17, 19 (2d Cir. 1990) ("Questions of venue and the enforcement of forum selection clauses are essentially procedural, rather than substantive, in nature.").

[3]*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Gallina v. Comm. & Indus. Ins.*, No. 8:06-CV-1529-T-27EAJ, 2008 WL 4491539, at *5 (M.D. Fla. Sept. 30, 2008).

[4]*Guenther v. Novartis Pharm. Corp.*, 6:08-CV-456-ORL-31, 2013 WL 1225391, at *2 (M.D. Fla. Mar. 27, 2013) ("[A]lthough the word 'dépeçage' is a 'stranger to Florida law,' the concept it represents is not. . . . Where the choice of law influencing a decision differ between the two states involved, separate substantive issues in the case may have to be resolved under the laws of different states.")

[5]*Bishop v. Florida Specialty Paint Co.*, 389 So. 2d 999 (Fla. 1980).

[6]*Shapiro v. Associated Int'l Ins. Co.*, 899 F.2d 1116, 1119 (11th Cir. (Fla.) 1990) ("Traditionally, when confronted with questions regarding the interpretation and validity of a contract, Florida courts have applied the law of the state where the contract was made or to have been performed.").

"Having failed to [use limiting language in structuring the contours of the insuring clause, or insert a specific exclusion], [Defendants] cannot now ask the court to re-write the policy for [them] under the guise of policy construction."[7]

**Second**, the trigger of coverage is the insured's wrongful act.

Coverage for [advertising injury] is not determined by the nature of the damages sought in the action against the insured, but by *the nature of the claims* made against the insured in that action. . . . The triggering event [under "advertising injury" offense-based coverage] is the insured's *wrongful act*, not the resulting injury to the third-party claimant.[8]

**Third**, complaints need not plead in the language of the policy.

[R]emote facts buried within causes of action that may potentially give rise to coverage are sufficient to invoke the defense duty [and] the insured's conduct [need not] proximately cause the third party claim in order to trigger the defense duty.[9]

**Fourth**, no particular theory of liability need be pled to trigger coverage.

The word "offense" cannot be read to limit coverage only to a particular "cause of action" or "claim." The word "offense" simply does not have this meaning in either common usage or legal usage.[10]

**Fifth**, facts, not labels of cause of action, determine potential for coverage.

[C]overage is determined by looking at the policy and the actual facts – not the labels attached to the underlying tort obligation.[11]

---

[7] *Adolfo House Distrib. Corp. v. Travelers Prop. & Cas. Ins. Co.*, 165 F. Supp. 2d 1332, 1340 (S.D. Fla. 2001).

[8] *Atlantic Mut. Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1032 (2002); *see Ground Down Eng'g, Inc.*, 540 F.3d at 1275 (Florida law also requires that "'[t]he duty to defend depends solely on the facts and legal theories alleged in the pleadings and claims against the insured.' ").

[9] *Pension Trust Fund v. Federal Ins. Co.*, 307 F.3d 944, 951 (9th Cir. (Cal.) 2002); *Mid-Continent Cas. Co. v. Basdeo*, 742 F. Supp. 2d 1293 (S.D. Fla. 2010) *aff'd*, 477 F. App'x 702 (11th Cir. 2012) ("As long as the complaint alleges facts that create potential coverage under the policy, a duty to defend is triggered. . . . '[A]n insured is entitled to a defense by its insurer against even the most frivolous suit, so long as it describes an occurrence within coverage.' " (citation omitted)).

[10] *McCormack Baron Mgmt. Servs., Inc. v. American Guar. & Liab. Ins. Co.*, 989 S.W.2d 168, 171 (Mo. 1999); *see Ticor Title Ins. Co. v. University Creek, Inc.*, 767 F. Supp. 1127, 1134 (M.D. Fla. 1991) (Florida courts must find particularized language clarifying intent to narrowly define a term; otherwise, "the Court construes those words broadly in favor of coverage.").

[11] *Sinni v. Scottsdale Ins. Co.*, 676 F. Supp. 2d 1319, 1332 (M.D. Fla. 2009).

What is important is not the legal label that the plaintiff attaches to the defendant's (that is, the insured's) conduct, but whether that conduct as alleged in the complaint is at least arguably within one or more of the categories of wrongdoing that the policy covers.[12]

## II.   OFFENSE (f) FOR "COPYING IN YOUR 'ADVERTISEMENT' A[N] . . . ORGANIZATION'S . . . ADVERTISING IDEA"

### A.   Coverage Under Offense (f) is Subject to a Three Part Test

Hartford's policy defines "personal and advertising injury" to include injury arising out of the offense of (f) – "Copying in your 'advertisement' a[n] . . . organization's 'advertising idea' . . . ."  Hartford's denial letter does not explain why this offense is not factually implicated by the unfair competition allegations against its insured, Universal.  **[SMF ¶5]**  Offense (f) contains three elements:  (1) Copying a person's or organization's (2) "advertising idea" and (3) in your "advertisement."  Each element is met by the assertions in the *Dior Counterclaim*.

### B.   Each of the Elements of the Three Part Test Are Met

#### 1.   Element One – An "Advertising Idea" is Alleged

The Hartford policy defines the term "advertising idea" broadly as "any idea for an 'advertisement.'"  **[SMF ¶7]**  Absent that definition, courts applying Florida law have defined the term (and a reasonable insured in Universal's position would have understood the term), especially in light of Hartford's broad definition, to include "any idea or concept related to the promotion of a product to the public."[13]  Furthermore, an "advertising idea" need not be limited to positive qualities of Plaintiff's products and services but can include any aspect rendering them "desirable" or "related to their promotion."[14]

---

[12]*Curtis-Universal, Inc. v. Sheboygan Emerg. Med. Servs., Inc.*, 43 F.3d at 1122 (7th Cir. (Wis.) 1994) (citations omitted); *see Lime Tree Vill. Cmty. Club Ass'n, Inc. v. State Farm Gen. Ins. Co.*, 980 F.2d 1402, 1406 (11th Cir. (Fla.) 1993) ("[E]ven if the counts are 'merely' creative discrimination claims, **the factual allegations triggered the duty regardless of the label State Farm would like to attach to the cause of action**. . . . The court cannot speculate as to the nature . . . of the claims; it may only look to the factual allegations of the underlying complaint." (emphasis added)).

[13]*Hyman v. Nationwide Mut. Fire Ins. Co.*, 304 F.3d 1179, 1188 (11th Cir. (Fla.) 2002).

[14]"One of the fundamental features of negation in natural language is the way in which it triggers or projects an opposite, positive counterpart which is being defeated."  CADAAD 2010 Book of Abstracts, "'*Whoever Thought Tuna Had Drama?' A Critical Stylistic Analysis of Negation in Advertising Texts*," 70, Wydawnictwo Uniwersytetu Łódzkiego, Łódź, 2010.

Dior seeks to make its products "desirable" by appealing to a woman's desire to be sophisticated, glamorous, and attractive.  The image of Charlize Theron entices consumers to purchase the product to be more like her, while the color gold, traditionally associated with luxury and extravagance, holds a high level of appeal to the average woman.  The totality of Dior's advertising concept consisting of a celebrity spokesmodel, the gold embellishments, and the public associations tied with the word "j'adore" render the product more desirable and relate to the promotion of Dior's products, thereby constituting an "advertising idea."

An "advertising idea" can be any idea that appeals to the many ways consumers make choices.[15]  By using the term "j'adore" with its products, Dior conveys the positive association of love, worship, and adoration that the public normally associates with the word "adore."  A luxury brand must perform at an "experiential level," or in other words, the "emotional value of the brand the consumers buy into—beyond what the product is to what it represents."[16]  Here, Dior's use of "j'adore" affects the way consumers make choices, because it appeals to a woman's emotional desire to be loved and adored.  Therefore, the "advertising idea" element is satisfied.

### 2.    Element Two – "Copying" a "Person's or Organization's" Advertising Idea is Alleged

"Copying" is defined by RANDOM HOUSE as "13. to follow as a pattern or model; to imitate."[17]  **[SMF ¶10]**  Dior alleges that the "advertising idea" ADORE is its own.  Its alleged common law rights are federalized by the Lanham Act in 15 U.S.C. § 1125 (a), which dissuade affiliated entities from obtaining benefits through its association with the ADORE Mark where violated.  Dior is indisputably an organization.

The *Dior* **Counterclaim ¶24** urged that "[Universal] continued to advertise and offer under the Infringing Marks skin care products and related goods and services that are identical

---

[15]BRITANNICA CONCISE ENCYCLOPEDIA, *advertising*, available at http://www.answers.com/topic/advertising ("Techniques and practices used to bring products, services, opinions, or causes to public notice for the purpose of persuading the public to respond in a certain way.").

[16]Rohit Arora, *8 P's of Luxury Brand Marketing, http://www.brandchannel.com/images/papers/533_8ps_of_luxury_branding.pdf.*

[17]RANDOM HOUSE UNABRIDGED DICTIONARY 2nd Ed. © 1993, p. 448.

and/or closely related to those offered by Dior and under its J'ADORE Marks." **[SMF ¶27]** **Counterclaim ¶29** also asserts that Universal's use of the Infringing Marks "unfairly and unlawfully wrests from Dior control over its J'ADORE Marks **and reputation** and is unjustly enriching Handicraft." **[SMF ¶29 (emphasis added)]**

Dior claims that Universal is "misappropriating and trading upon the goodwill" of its use of J'ADORE by using the word ADORE in its public statements. **[SMF ¶¶32-33]** Critically, the use of one word alone can be enough to constitute an advertising idea. In *General Cas. Co. of Wis. v. Wozniak Travel, Inc.*,[18] the court concluded that defendant's use of the word "hobbit" to convey associations with the Lord of the Rings trilogy and to capitalize on the goodwill surrounding the Tolkien works fell within the court's broad reading of "advertisement."[19]

### 3.    Element Three – "In Your 'Advertisement'"

"Advertisement" is defined in the Policy as "the widespread public dissemination of information or images that has the purpose of inducing the sales of goods, products or services through: **a.** [various media]; **b.** The Internet . . . **c.** Any other publication that is given widespread public distribution." **[SMF ¶7]**

Subsection (b) of the "advertisement" definition, the Internet, is readily met by Dior's allegations that Universal is:

> marketing, **advertising** and promoting its line of skin care products and related goods under the Infringing Marks **through a website** associated with the domain name, adorecosmetics.com." (emphasis added.) **[SMF ¶29]**

**Counterclaim ¶46** alleged that:

> Handicraft has "registered, trafficked in, and/or used the adorecosmetics.com domain name with the bad faith intent to profit      from      the      J'ADORE      Marks"      [and]      and      "the

---

[18]*General Cas. Co. of Wis. v. Wozniak Travel, Inc.*, 762 N.W.2d 572, 580 (Minn. 2009) ("**[U]ses of the word 'hobbit'** by Hobbit Travel [in its domain name and on its website] were made [**to attract the national public's attention to its travel agency, and capitalize on the goodwill surrounding the Tolkien works**] . . . . [They fall] within our broad reading of 'advertisement'; thus, Tolkien's damages arose out of Hobbit Travel's 'use of another's advertising idea in [its] "advertisement." ' ") (emphasis added).

[19]*Id.*

adorecosmetics.com domain name has been used by Handicraft with the bad faith intent to reap the benefit of the goodwill in the J'ADORE Marks, to divert consumers to the adorecomsetics.com domain name **for their own commercial gain, and to otherwise profit** from unauthorized use of the J'ADORE Marks." (emphasis added.) **[SMF ¶31]**

Thus, Universal's use of the adorecosmetics.com website alleged by Dior constitutes "widespread public dissemination of information or images that has the **purpose of inducing the sales of goods, products, or services through . . . The Internet**."

In *Air Engineering, Inc. v. Indus. Air*, an "advertisement" was implicated by the use of a website to attract customers or supporters.[20]   The *Air Engineering* court reasoned:

We note that [the] allegation concerning the use of the website content . . . supports a duty to defend under the "use of another's advertising idea" definition of advertising injury. . . . **[A]lthough the complaint does not explain what constitutes the "content" of the website, a reasonable reading of the complaint is that the content is or includes advertisement.**[21]

Subsection (c) is satisfied because Universal allegedly engaged in "other publication that is given widespread public distribution." **Counterclaim ¶20** asserts that Handicraft began using the Infringing Marks "in connection with its own line of skin care products and related retail store services." **[SMF ¶27]**  The "**in your** 'advertisement'" element is like the "in the course of" causation element in the prior 1986 ISO CGL policy form, which required that the "advertising injury" be caused by an offense "committed in the course of advertising [the insured's] goods, products, or services."[22]   The Hartford policy only requires that the "copying of a person's or organizations advertising idea" need merely occur "in [the insured's] advertisement."

**Counterclaim ¶20** alleged that:

[l]ong after Dior commenced its use of the J'ADORE Marks in connection with fragrance and skin care products, and long after Dior's J'ADORE trademark registrations had become incontestable, Handicraft began using the marks ADORE and

---

[20]*Westfield Cos. v. O.K.L. Can Line*, 804 N.E.2d 45, 51 (Ohio Ct. App. 2003) ("A web page is advertising under any definition.").

[21]*Air Eng'g, Inc. v. Indus. Air Power, LLC*, 346 Wis.2d 9, 25-26 (Wis. Ct. App. 2013) (emphasis added).

[22]*State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1231 n.2 (11th Cir. (Fla.) 2004).

ADORE ORGANIC INNOVATIONS (together, the "Infringing Marks") **in connection with its own line of skin care products and related retail store services**." (emphasis added.) **[SMF ¶27]**

Thus, the same allegations that implicate coverage for copying Dior's J'ADORE advertising idea also give rise to the satisfaction of the "in your" advertisement requirement.

Universal used the word "Adore" in connection with its own line of skin care products and retail services when it displayed the word "Adore" on its storefront in public malls. The Florida Court of Appeal held that the "in your 'advertisement'" element was satisfied by "displaying a copyrighted work at a trade show which is restricted to members of a trade association and qualified buyers."[23]   The display of a copyrighted product was actionable as an "advertisement" because it satisfied the condition of "widespread public distribution."[24]

Here, unfair competition claims that depend upon actionable use of Dior's allegedly protected word "adore" create liability just as they would for a trade dress claim,[25] which like unfair competition claims,[26] encompass actionable promotion of challenged product descriptions used as "advertising ideas."

To remedy the conduct alleged, including Count II for Lanham Act violations and the Florida common law unfair competition Count IV, Dior sought injunctive relief as part of the prayer against Universal for conduct which included (a) advertising; (b) displaying; and (d) conducting any activities that include J'ADORE in whole **or in part**. **[SMF ¶26]**   Dior also sought "destruction" of all "promotional and marketing materials, advertisements, and other materials . . . ." **[SMF ¶27]**

---

[23]*Bear Wolf, Inc. v. Hartford Ins. Co. of Se.*, 819 So. 2d 818, 820 (Fla. Dist. Ct. App. 2002).

[24]*Id.*

[25]*Cent. Mut. Ins. Co. v. StunFence, Inc.*, 292 F. Supp. 2d 1072, 1079-80 (N.D. Ill. 2003) (Allegations that StunFence used Gallagher's trademark on its website and in promotional claims . . . was "more than sufficient to generate [insurer's] duty to defend under the Primary Policy's coverage of injuries arising from the "use of another's advertising idea **in your 'advertising** (emphasis added).'").

[26]*R.C. Bigelow, Inc. v. Liberty Mutual Ins. Co.*, 287 F.3d 242, 248 (2d Cir. (Conn.) 2002) ("Bigelow's ads displayed the allegedly infringing trade dress.  If, as Celestial alleged, Bigelow's copied trade dress created consumer confusion, the ads could be found to have contributed to such confusion.").

Under the Federal Rules of Civil Procedure, a prayer for relief is part of a complaint and must be so construed.[27]   Florida law recognizes that facts asserted in the prayer are relevant to coverage analysis.[28]   Therefore, the "in your 'advertisement'" element is satisfied.

III.   **OFFENSE (g) "INFRINGEMENT . . . OF . . . TITLE OF ANY LITERARY OR ARTISTIC WORK IN YOUR 'ADVERTISEMENT'" FALLS WITHIN AN EXPRESS EXCEPTION TO THE EXCLUSION (7) FOR INTELLECTUAL PROPERTY**

A.   **Coverage is Subject to a Three Part Test**

Hartford's policy defines "personal and advertising injury" to include injury arising out of offense (g) – "infringement . . . of . . . title of any literary or artistic work."   Offense (g) contains three elements:  (1) infringement of (2) title of any literary or artistic work; (3) in your "advertisement."

B.   **Each of the Elements of the Three Part Test Are Met**

1.   **Element One – Title Of Any Literary Or Artistic Work Is Alleged**

a.   **A Literary Title is Asserted**

Hartford does not define the term "title of any literary . . . work" in its policy.   The trademark registrations of Dior suggest that the term J'ADORE is simply a French word meaning "I adore," "I worship" or "I love."   **[SMF ¶14]**   J'ADORE is a contraction of two distinct French words:  "je," meaning "I" and "adore," meaning love, adore or worship,[29] but title need not be limited to a phrase.[30]   Trademarks and titles can be synonymous as J'ADORE is both.

---

[27]Under Fed. R. Civ. P. 7(a)(1), a complaint is a form of pleading. Pursuant to Fed. R. Civ. P. 8(a), a claim for relief is part of a pleading.

[28]*Dadeland Depot, Inc. v. St. Paul Fire and Marine Ins. Co.*, 945 So.2d 1216, 1223 (Fla. 2006) ("[A]t the summary judgment stage prior to Dadeland having the opportunity to prove the damages alleged in its complaint [] we refuse to simply ignore the actual **prayer for relief** in the complaint and the damages alleged therein.") (emphasis added).

[29]*Norfab Corp. v. Travelers Ind. Co.*, 555 F. Supp. 2d 505, 512 (E.D. Pa. 2008) (An abbreviation like "PBC" is a stylized abbreviation and thus "the name given" for a product, which therefore potentially falls "within the meaning of the word *title* as used by the insurance policy.").

[30]No *federal* law supports reference to narrower definitions of "title" than that posited by dictionary definitions to which a lay person would refer.  Even if "Ŧ" is deemed a single word, not a phrase, single words can be a powerful title, e.g., "TRIPMATE" for a cartographic product, *Am. Emp'rs Ins. Co. v. DeLorme Publ'g Co.*, 39 F. Supp. 2d 64, 77 (D. Me. 1999), or

Thus, *Houbigant, Inc. v. Fed. Ins. Co.*, 374 F.3d 192, 200 (3d Cir. (N.J.) 2004) observed that titles may be trademarked.  2 MᴄCᴀʀᴛʜʏ § 10:4.10 notes that while the PTO may refuse to register titles as trademarks, titles are routinely protected as unregistered or common law trademarks.

> [T]rademarks, titles, and slogans are heavily related and can be synonymous. Thus, coverage for "infringement of copyright, title or slogan" may envelop trademark infringement.[31]

*A Touch of Class* found a "title" to be "a name or appellation" such as "Big Mac," "Chap Stick," and "Cheerios" (all of these examples are registered trademarks).[32]

Literary means "**1.** pertaining to or of the nature of books and writings esp. those classified as literature: *literary history*."[33]  J'ADORE has been the title of French, as well as English, books which readily meet the definition of a literary, or artistic title.  On January 1, 2009, B. Grosset published Jean Desbordes' novel titled *j'adore* with a forward by his co-author, Jean Cocteau.  **[SMF ¶22]**  This tome is a literary work and predated both the *Dior Counterclaim* and the issuance of Hartford's policy to Universal.  On October 4, 2011, Isabelle Lafleche had her novel *J'ADORE* New York published followed by *J'ADORE* Paris on August 10, 2013. **[SMF ¶23]**

The Second Circuit in *Kelly-Brown v. Winfrey* recently distinguished the question of *use of* a trademark in commerce, "[i]n determining whether a use is made 'as a mark,' however, we make a more detailed determination of the particular manner in which the mark was used."[34] This is to avoid "conflat[ing] two distinct concepts, use *of* a trademark . . . and use *as* a mark."

---

"CARNIVAL" to describe seafood.  *Carnival Brands, Inc. v. Am. Guar. & Liab. Ins. Co.*, 726 So. 2d 496, 500 (La. Ct. App. 1999).

[31]*Super Duper Inc. v. Pa. Nat. Mut. Cas. Ins. Co.*, 683 S.E.2d 792, 797 (S.C. 2009).

[32]MᴄCᴀʀᴛʜʏ § 33:7 n.4 ("*A Touch of Class Imports, Ltd. v. Aetna Cas. & Sur. Co.*, 901 F. Supp. 175, 177 … (S.D.N.Y. 1995) *adhered to on reargument*, (Jan. 12, 1996) … *Touch of Class* [served as both a] title or slogan to convey a sense of style, fashion and class[.]").

[33]Rᴀɴᴅᴏᴍ Hᴏᴜsᴇ Uɴᴀʙʀɪᴅɢᴇᴅ Dɪᴄᴛɪᴏɴᴀʀʏ 2nd Ed. © 1993, p. 1122; **[SMF ¶8]**.

[34]*Kelly-Brown v. Winfrey*, 717 F.3d 295, 306 (2d Cir. 2013).

*Id.* at 305.  *Winfrey* explained that a symbol may or may not be used as a trademark.  *Id.* at 305. And a title may or may not be used as a trademark.  *Id.*

A number of modern trademark cases dealing with titles concern conflicting uses that cross into different media, such as:

$   A song or title use of an advertisement for golf clubs.[35]

$   A performing group name used a mark for cigarettes.[36]

An entertainment or literary title can be strong enough to prevent use of the title on articles and merchandise. For such items, pure confusion of the source of goods is not the problem. Rather, it is confusion as to sponsorship, connection or affiliation.  The wrong of the defense is essentially the same as in the mainstream trademark cases.  "[I]mposing upon the plaintiff a risk that the defendant's goods would be associated by the public with the plaintiff."[37] Thus, magazine titles can be used by sellers of merchandise, including one for wearing apparel.[38]

There is no intellectual property right denoted as "title infringement."  Such claims are ordinarily brought as infringement of trademarks[39] or copyright[40] and must ordinarily be labeled as such.   An insurer should not escape liability because claims are labeled as trademark

---

[35]*EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56 (2d Cir. 2000) (Reversing summary judgment, there was no infringement of song titled "Sing, Sing, Sing" by defendant "Swing Swing Swing" slogan use in a television ad for golf clubs because of its "fair use" defense.).

[36]*Blue Man Prods., Inc.* v. *Tarmann*, 2005 WL 2034544 (Trademark Tr. & App. Bd. Aug. 18, 2005) (BLUE MAN GROUP failed to provide that a likelihood of confusion would be caused by BLUE MAN cigarettes).

[37]*Wyatt Earp Enterprises, Inc. v. Sackman, Inc.*, 157 F. Supp. 621, 626 (S.D.N.Y. 1958); *see Girl Scouts of U. S. of Am. v. Personality Posters Mfg. Co.*, 304 F. Supp. 1228, 1230 (S.D.N.Y. 1969).

[38]*See, Advance Magazine Publishers Inc. v. Vogue Int'l*, 123 F. Supp. 2d 790 (D.N.J. 2000) (Vogue International for a web-based retail offering clothing, cosmetics and accessories is an infringement of Vogue Magazine mark.)

[39]*Acuity v. Bagadia*, 750 N.W.2d 817, 827, (Wis. 2008) ("We agree with these courts that construing the word 'title' to encompass trademark infringement claims is consonant both with the canons governing the interpretation of insurance policies and with the plain meaning of 'title.'").

[40]1, 2 MCCARTHY §§ 7:20, 10:4.10.

infringement, even though the allegations support "infringement of title."[41]

Case law reveals why a literary title is implicated in light of the reasoning of a case finding an abbreviation preceding a relational term "PBI MATRIX" to be a "title." As the *Norfab* court stated:

> [Travelers] acknowledges that *title* has several dictionary definitions that could be applicable in the context of an insurance policy and that case law defining it is split between two or more views. We conclude that the word *title* is reasonably susceptible of different constructions under Pennsylvania law. *See Houbigant,* 374 F.3d at 199. . . NorFab contends that this court should adopt a definition of the word that includes any distinctive "name, appellation [or] epithet ...." *Id.* at 200 . . . We, of course, must construe the language in favor of the insured.[42]
>
> . . . . [T]he word *title* as it appears in the insurance contract before us encompasses any distinctive name, appellation or epithet.[43]
>
> [T]he trademark granted in the `768 registration is for "PBI MATRIX," with the letters of "PBI" stylized as described above and the word "MATRIX" in block capitals. . . . Significantly, the complaint always refers separately to the PBI MATRIX® mark and never refers to it as a "design mark." . . . Moreover, the underlying complaint alleges that "PBI MATRIX®" is the name given by PBI to the thermal and flame resistant fabric that was at issue. *PBI v. Norfab* Compl. at ¶ 11. Such a product name falls within the meaning of the word *title* as used by the insurance policy at issue here. *See Houbigant,* 374 F.3d at 200.[44]

*Norfab* relied upon *Houbigant* which, as *Norfab* observed:

> [S]quarely rejected the reasoning of the courts which have defined *title* more narrowly so as to limit it to literary or artistic works.[45]

In so concluding, the *Houbigant* court addressed two key points germane here.

---

[41]*Town of Massena v. Healthcare Underwriters Mut. Ins. Co.,* 834 N.Y.S.2d 736, 739 (3d Dep't 2007) ("We have previously explained that [a] party's characterization of the causes of action alleged in a complaint are not controlling as we seek to determine the nature of the claims based upon the facts alleged and not the conclusions which the pleader draws therefrom[.]"). (quotations omitted).

[42]*NorFab Corp. v. Travelers Indem. Co.,* 555 F. Supp. 2d 505, 509-10 (E.D. Pa. 2008).

[43]*Id.* at 510.

[44]*Id.* at 511-12.

[45]*Id.* at 510.

**First**, it implicitly recognized that use of another's literary title did not require that either the claimant or the insured be sued for infringement, use of a literary title in a literary medium or context. Indeed, the scenarios it addressed suggest precisely the reverse. "Who would think for a second that it would cover infringement of Catcher in the Rye Bread® but not Wonder Bread®?[46] The court also explained that so long as the title used was that of a literary work, the offense would suffice.[47]

**Second**, the claimant need not own the literary title in issue, even where the policy limited coverage to "title of any literary or artistic work."[48] The Seventh Circuit clarified what could not serve as a literary title and by its definition, clarified why a literary title is at issue here:

> In other words, falsely describing *how* something is made or *who* made it is quite different than appropriating or misusing the "title" of another's artistic work. It is one thing to claim that your sparkling wine was created using the *méthode champenoise;* it is quite another to claim that your sparkling wine is Veuve Clicquot Ponsardin [TM]. NAA's original complaints alleged that Stravina deceived customers through mislabeling and the like, but it provided nothing to indicate that it was trying to assert a claim of title infringement.[49]

Dior's unfair competition claims expressly assert that the public was misled because the J'ADORE title was used as part of a product defamation from the registered trademark by Dior, but in a way that confused Dior customers into believing that the J'ADORE organic innovation product was sourced from, sponsored by, or associated with Dior. *Id.* at 734.

The title of a novel with a preface by a famous French artist, Jean Cocteau, readily meets the definition literary title – here "J'ADORE" published January 1, 2009 by B. Grosset years

---

[46]*Houbigant,* 374 F.3d at 199-200.

[47]*Id.* at 200 ("Not only would it 'send insureds on a quixotic quest for literary works the title of which coincidently mirrored the registered title alleged to have been infringed[.]'").

[48]*Native Am. Arts, Inc. v. Hartford Cas. Ins. Co.*, 435 F.3d 729, 734 (7th Cir. 2006) ("In *Curtis-Universal, Inc. v. Sheboygan Emergency Medical Services, Inc.,* 43 F.3d 1119, 1124 (7th Cir.1994), we suggested that the infringement of titles 'presumably' involves titles 'of books, songs, products, services, and so forth.' . . . *First State Ins. Co. v. Alpha Delta Phi Fraternity,* 1995 WL 901452, at *11 (1995) (unpublished) (defining term 'title' as 'the name by which anything is known,' following Black's Law Dictionary 1485 (6th ed.1990)).").

[49]*Native Am. Arts*, 435 F.3d at 734.

before the present underlying dispute and policy form was issued.  **[SMF ¶22]**  The same is true of J'ADORE New York with the phrase J'ADORE in bold published October 4, 2011 by Isabelle Lafleche and J'Adore Paris published August 10, 2013 by the same author.  **[SMF ¶23]**

### b.      An Artistic Title is Asserted

"A title of any artistic . . . work" is implicated as well.  Artistic means "**1.** conforming to the standard of art, satisfying aesthetic requirements:  *artistic productions*."   **[SMF ¶9]**  "Artistic" is here exemplified by Dior's use of J'ADORE with an iconic image of the actress Charlize Theron in gold:

> 12.    Dior markets and sells its fragrance and skin care products under the J'ADORE Marks throughout the United States, including through DIOR boutiques and the DIOR website (http://www.dior.com), through third-party department stores such Macy's and Bloomingdale's, and through specialty beauty retailers such as Sephora.  **[SMF ¶25]**
>
> . . . .
>
> 14.    Dior has devoted . . . significant resources to advertise and market the J'ADORE Marks on or in connection with fragrance and skin care products throughout the United States. For many years, the celebrity actress Charlize Theron has been the face of J'ADORE, and advertisements for J'ADORE products have appeared in print media, on the Internet, and on television. All advertising materials prominently feature the J'ADORE mark. **[SMF ¶26]**

The Dior J'ADORE website features Charlize Theron in a gold dress bedecked with gold jewelry in the Hall of Mirrors at Versaille lighted in golden tones, offering an artistic image that is both cinematic and theatrical, as well as resonant with the artistic image Dior associates with the J'ADORE product line.  **[SMF ¶18]**

### 2.      Element Two – "Infringement Of" Is Alleged

The title of any literary or artistic work is asserted as a basis for liability where it is taken from the claimant.  If deemed an element of Dior's trademark infringement claims, then it falls within an exception to Hartford's intellectual property exclusion.  The same is true of unfair competition claims which also encompass liability under offense (f) but also fall outside Hartford's intellectual property exclusion.

### 3. Element Three – In Your "Advertisement"

"Advertisement" is met as the trademark and unfair competition allegations all allege use of the J'ADORE moniker in connection with the asserted claims that were allegedly committed in the course of Universal's advertisements. **[SMF ¶¶27-33]**

## IV. NO EXCLUSIONS BAR A DEFENSE

### A. Exclusion (7) for (Intellectual Property) Excepts Conduct Covered Within Offenses (f) or (g) Alleged Here

Both offenses (f) and (g) are implicated by the use of ADORE, which purportedly constituted unfair competition and necessarily fell within express exceptions to Hartford's intellectual property exclusions.[50]

The Amendment of Exclusions and Definitions "Personal and Advertising Injury," form SS 41 62 06 11 presents no impediment to potential coverage and provides:

> **p. Personal and Advertising Injury:**
>
> > **(7) (a)** arising out of any . . . violation of any intellectual property right, such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity; . . .
> >
> > . . . .
> >
> > However, **this exclusion does not apply** if the only allegation in the claim or "suit" involving any intellectual property right is limited to:
> >
> > > **(1) Infringement, in your "advertisement"**, of:
> > >
> > > . . . .
> > >
> > > > **(c)  Title of any literary or artistic work; or**
> > >
> > > **(2) Copying, in your "advertisement"**, a person's or **organization's "advertising idea"** or style of "advertisement." **[SMF ¶7 (emphasis added)]**

Notably, Hartford's exception to its IP exclusion for literary or artistic titles does not make this distinction because the exception is not limited to "trademarked titles," although

---

[50]The last count for cybersquatting is not an intellectual property claim as the IP exclusion uses that term, but a form of unfair competition with statutory elements designed to address statutory violations. **[SMF ¶24]**

Hartford could have chosen to so limit its coverage.  This court cannot read in its policy language such a limitation under the guise of interpretation.[51]

As *Kelly-Brown v. Winfrey*, 717 F.3d 295, 310 (2d Cir. 2013) explained, "title becomes a symbolic identifier of a product or product line through repetition."  But there is nothing inconsistent in title also being a trademark.  This squares with Hartford's policy coverage for "infringement in your 'advertisement,' of: . . . Title of any literary or artistic work" outside the trademark infringement exclusion.  Some policies specifically integrate these elements into one "advertising injury" offense, "infringement of trademark, copyright, title or slogan" because of their close relationships."[52]

As a New York federal district court observed:

> Advertising injury coverage for injury arising out of policyholder's "infringement of . . . title" covered policyholder's use of another's trademark "Touch of Class" in connection with policyholder's advertising and sale of its jewelry where trademark used term as slogan or title to convey a sense of "style, fashion and class."[53]

Even where an insurance policy at issue expressly excludes coverage for trademark infringement, a policyholder may still be entitled to coverage for infringement of title under another covered offense.[54]

**B.    Exclusion (10) For (Email Addresses) Does Not Apply to a Website Address**

Nor is Exclusion 10, for "unauthorized use of name or product in email," implicated.  It provides:

---

[51]*In re Ancillary Receivership of Reliance Ins. Co.*, 55 A.D.3d 43, 46, 863 N.Y.S.2d 415, 418 (2008) *aff'd,* 12 N.Y.3d 725, 904 N.E.2d 495 (2009) ("Courts must neither add, excise nor modify the terms of an agreement; nor may a court distort the meaning of an agreement under the guise of interpretation[.]").

[52]*See e.g., Fireman's Fund Ins. Co. of Wis. v. Bradley Corp.*, 660 N.W.2d 666, 675 (Wis. 2003).

[53]*A Touch of Class Imports, Ltd. v. Aetna Cas. & Sur. Co.*, 901 F. Supp. 175, 177 (S.D.N.Y. 1995).

[54]*Finger Furniture Co. v. Travelers Indem. Co.*, No. H-01-2797, 2002 WL 32113755, at *10 (S.D. Tex. (Houston Div.) Aug. 19, 2002) (Insurer had a duty because " 'TRUE VALUE' could certainly be considered a 'title . . .' and an infringement of that mark potentially fits within the . . . definition of 'advertising injury.'").

**(10)** Arising out of the unauthorized use of another's name or production in your e-mail address, domain name or metatags, or any other similar tactics to mislead another's potential customers; **[SMF ¶39]**

The web site name used by Universal to promote its ADORE ORGANIC INNOVATION product, adorecosmetics.com, bears no similarity to Dior's website, Dior.com.  Moreover, no specific distinct J'ADORE website was created by Dior in connection with its marketing of its J'ADORE mark line of clones and perfumes, skin care products.

Exclusion (10) is not addressed to Universal's website address, but limited to email, domain name and metatag despite the obvious existence of websites as of the date of adoption of this exclusion.  These three enumerated locations are very specific.  A website is not included among them:

> Furthermore, if the exclusion were meant to include websites generally, it would be odd to enumerate two constituent elements of a website (its domain name and metatags) but neglect to mention the website itself. To conclude otherwise would allow the "similar tactics" language to swallow the narrow language used in the exclusion and turn it into a catch-all exclusion for the use on the internet in any way of material belonging to another.[55]

While Dior admits that it has for many years used the celebrity actress Charlize Theron as the face of J'ADORE in the advertisements for J'ADORE products, appearing in print media on the internet and on television, **[SMF ¶26]** no similar spokesperson is used by Universal nor are its products associated with any female actress and celebrity, much less one whose appearance is reminiscent of Charlize Theron.  Thus, Exclusion (10) cannot bar a defense under any of the asserted claims, including that for alleged cybersquatting.

## V.    CONCLUSION

Universal seeks an order declaring that Hartford owed a defense for the Dior Counterclaim, compelling Hartford to pay all reasonable attorneys' fees that were conducted against liability in defending the Dior Counterclaim, plus prejudgment interest at 10% per annum

---

[55] *St. Luke's Cataract & Laser Inst., P.A. v. Zurich Am. Ins. Co.*, 506 F. App'x 970, 976 (11th Cir. 2013).

from date of invoice pursuant to Florida statutes and its reasonable coverage fees incurred in this proceeding.

Dated:  February 20, 2014                     Respectfully submitted,


                                              /s/ David H. Charlip
                                              David H. Charlip, Esq.
                                              CHARLIP LAW GROUP L.C.
                                              17501 Biscayne Boulevard, Suite 510
                                              Aventura, Florida  33160
                                              Telephone:  (305) 354-9313
                                              Facsimile:  (305) 354-9314
                                              dcharlip@charliplawgroup.com

                                              David A. Gauntlett, Esq.  *[Pro Hac Vice]*
                                              GAUNTLETT & ASSOCIATES
                                              18400 Von Karman, Suite 300
                                              Irvine, California  92612
                                              Telephone:  (949) 553-1010
                                              Facsimile:  (949) 553-2050
                                              info@gauntlettlaw.com

                                              Attorneys for Plaintiff Universal Handicraft, Inc.
                                              dba Deep Sea Cosmetics

### Certificate of Service

I HEREBY CERTIFY that this document(s) was filed through the ECF system, sent electronically and paper copies served via Federal Express on February 20, 2014, on counsel for parties of record on the Service List below.

         /s/ David H. Charlip_____

### SERVICE LIST

Sina Bahadoran, Esq.
HINSHAW & CULBERTSON, LLP
2525 Ponce de Leon Boulevard, 4th Floor
Coral Gables, Florida  33134-6044
Telephone:  (305) 358-7747
Facsimile:   (305) 577-1063
sbahadoran@hinshawlaw.com

Attorneys for Defendant
Hartford Casualty Insurance Company