UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 14-20305-LENARD-O'SULLIVAN

UNIVERSAL HANDICRAFT, INC. dba
DEEP SEA COSMETICS, a Florida
corporation,

                  Plaintiff,

vs.

HARTFORD CASUALTY INSURANCE
COMPANY, a Connecticut corporation,

                  Defendant.

## STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON HARTFORD'S DUTY TO DEFEND

### Oral Argument Requested

Plaintiff Universal Handicraft, Inc. d/b/a Deep Sea Cosmetics ("Universal") respectfully submits the following Statement of Material Facts in support of its Motion for Partial Summary Judgment.

### MATERIAL FACTS

| The Parties ||
|---|---|
| 1. Plaintiff, Universal Handicraft, Inc. d/b/a Deep Sea Cosmetics ("Universal") is a corporation organized under the laws of the State of Florida. Its principal executive offices and headquarters are located in Florida. | Declaration of Shay Sabag Segev ("Segev Decl."), ¶2. |

| | | |
|---|---|---|
| 2. | On information and belief, Defendant Hartford Casualty Insurance Company ("Hartford") is a corporation organized and existing under the laws of Connecticut with its principal offices in Hartford, Connecticut. | Segev Decl. ¶3; Complaint, ¶3. |
| 3. | On information and belief, the insurance policy issued by Hartford was intended to cover Universal's operations in Florida, including this district. | Segev Decl. ¶4, Complaint, ¶6. |
| | **The Policies** | |
| 4. | Hartford's Commercial General Liability Policy, No. 21SBMZJ3573DV. Hartford's policy was effective from January 12, 2013 to January 12, 2014. | Segev Decl. ¶5; **Exhibit "1."** |
| 5. | The Hartford policy promises that Hartford will defend and indemnify Universal from any suit seeking damages for "personal and advertising injury." Hartford's definition of "personal and advertising injury" does not include the offense of "unfair competition" but does include the offenses of: (f) "copying in your 'advertisement' a person's or organization's 'advertising idea' or 'style of "advertisement" '; and (g) infringement of copyright, slogan or title of a literary or artistic work in your 'advertisement.'" | Segev Decl. ¶ 6; **Exhibit "1" pp. 22, 23.** |
| 6. | Pursuant to the amendment of the declarations – additional persons or organizations designated as additional insureds, Form SS 123503-12 SEQ No. 001, process date 5/3/13, the following person(s) or organization(s) were added to the Declarations as Named Insureds: Universal Handicraft, Inc. dba Deep Sea Cosmetics, dba Adore Organic Innovation. | Segev Decl. ¶ 7; **Exhibit "1" p. 88.** |
| 7. | The Policy provides in relevant part: | Segev Decl. ¶ 8; |

| | | |
|---|---|---|
| | B. **Personal and Advertising Liability**<br>   1. **Insuring Agreement**<br>      a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.<br>. . . .<br>G. **Liability and Medical Expenses Definitions**<br>. . . .<br>   1. "Advertisement" means the widespread public dissemination of information or images that has the purpose of inducing the sale of goods, products or services . . .<br>. . . .<br>      b. The Internet, but only that part of a web site that is about goods, products or services for the purpose of inducing the scale of goods, products or services; or<br>      c. Any other publication that is given widespread public distribution.<br>. . . .<br>   2. **"Advertising Idea" Means Any Idea for an 'Advertisement'"**<br>. . . .<br>   17. Personal and advertising injury" means injury . . . arising out of one or more of the following offenses:<br>. . . .<br>      f. Copying in your "advertisement" a person's or organization's "advertising idea" or "style of advertisement."<br>      g. Infringement of . . . a literary or artistic work in your "advertisement." | Exhibit "1" p. 1, 20, 22-23. |
| | **DEFINTIONS OF POLICY TERMS** | |
| 8. | "Literary" is dictionary-defined as "1. pertaining to or of the nature of books and writings esp. those classified as literature: *literary history*." | Request for Judicial Notice ("RJN") ¶1; Exhibit "6." |
| 9. | "Artistic" is dictionary-defined as "1. conforming to the standard of art, | RJN ¶2; Exhibit |

|    | satisfying aesthetic requirements: *artistic productions*." | "7." |
|----|---|---|
| 10. | "Copying" is dictionary-defined as "13. to follow as a pattern or model; to imitate." | RJN ¶3; Exhibit "8." |
| | **THE UNDERLYING LITIGATION** | |
| 11. | On or about October 29, 2012, Universal filed a trademark application with the U.S. Patent & Trademark Office ("PTO") for the trademark ADORE ORGANIC INNOVATION. | Segev Decl. ¶9; Exhibit "12" ¶12. |
| 12. | On March 12, 2013 Universal filed its complaint for declaratory relief against Defendant Dior seeking an adjudication that Universal's ADORE ORGANIC INNOVATION trademark is not confusingly similar with, and does not infringe Dior's J'ADORE trademark. | Segev Decl. ¶10; Exhibit "12." |
| 13. | Following a February 27, 2013 letter from counsel for Dior, which asserted that Universal's ADORE ORGANIC INNOVATION trademark "is likely to confuse consumers and constitutes an infringement of [Dior's] mark J'ADORE' in violation of U.S. trademark law." | Segev Decl. ¶11. |
| 14. | The term J'ADORE is French, and in Dior's trademark registrations for J'ADORE, Dior concedes that the term literally translates to "I love," "I adore," or "I worship." | RJN ¶9; Exhibit "12"; Complaint ¶15; Answer ¶15. |
| 15. | Products sold under the J'ADORE mark include Dior's house mark – DIOR – in close proximity to the J'ADORE mark. When J'ADORE appears on Dior's products, the mark generally appears in lower-case letters, often with the letters set so that they do not appear on the same line, and where the letters "d" and "r" appear raised when compared with the other letters. | RJN ¶9; Exhibit "12"; Complaint ¶16. |
| 16. | Universal's ADORE ORGANIC INNOVATION is generally presented | Segev Decl. ¶ 12. |

| | | |
|---|---|---|
| | with the English term ADORE in larger letters and on one line, and the words ORGANIC INNOVATION appearing in somewhat smaller font adjacent to the word ADORE. | |
| 17. | Dior uses the J'ADORE mark in connection with perfume, eau de toilette and toilet waters, and body milks. Those products differ from the skin care products that Universal sells. | RJN ¶7; Exhibit "12"; Complaint ¶19. |
| 18. | The Dior website for J'ADORE products displays an image of Charlize Theron. | RJN ¶6; Exhibit "11." |
| 19. | Products sold under the ADORE ORGANIC INNOVATION mark are sold through a website and in retail stores dedicated to ADORE ORGANIC INNOVATION PRODUCTS. No Dior products are sold in the retail stores or website dedicated to Universal's brand. | Segev Decl. ¶13. |
| 20. | Consumers will not find J'ADORE products and ADORE ORGANIC INNOVATION products in the same retail stores. | Segev Decl. ¶14. |
| 21. | Universal advertises ADORE ORGANIC INNOVATION products through its website and through salespeople trained to perform demonstrations of the products. | Segev Decl. ¶15. |
| 22. | Jean Cocteau wrote a novel titled *j'adore*, published by B. Grosset on January 1, 2009. | RJN ¶4; Exhibit "6." |
| 23. | Isabelle Lafleche wrote novels titled *J'ADORE New York*, published on October 4, 2011, and *J'ADORE Paris*, published on August, 10, 2013. | RJN ¶5; Exhibit "7." |
| 24. | On April 4, 2013 Dior filed an answer and counterclaim against Universal, asserting four causes of action, including two for unfair competition, one for cybersquatting, and two for trademark infringement ("*Dior Counterclaim*"). | Segev Decl. ¶16; Exhibit "2." |
| 25. | The *Dior Counterclaim* stated that: | Segev Decl. ¶17; |

|  |  |  |
|---|---|---|
|  | Dior markets and sells its fragrance and skin care products under the J'ADORE Marks throughout the United States, including through DIOR boutiques and the DIOR website (http://www.dior.com), through third-party department stores such as Macy's and Bloomingdale's, and through specialty beauty retailers such as Sephora. | **Exhibit "2" ¶12.** |
| 26. | The *Dior Counterclaim* further stated that:<br><br>Dior has devoted and continues to devote significant resources to advertise and market the J'ADORE Marks on or in connection with fragrance and skin care products throughout the United States. For many years, the celebrity actress Charlize Theron has been the face of J'ADORE, and advertisements for J'ADORE products have appeared in print media, on the Internet, and on television. All advertising materials prominently feature the J'ADORE mark. Dior spends millions of dollars annually on advertising, marketing and promotion of its fragrance and skin care products under the J'ADORE Marks. | Segev Decl. ¶18;<br><br>**Exhibit "2" ¶14.** |
| 27. | The *Dior Counterclaim* alleged that:<br><br>[l]ong after Dior commenced its use of the J'ADORE Marks in connection with fragrance and skin care products, and long after Dior's J'ADORE trademark registrations had become incontestable, Handicraft began using the marks ADORE and ADORE ORGANIC INNOVATIONS (together, the "Infringing Marks") in connection with its own line of skin care products and related retail store services." | Segev Decl. ¶19;<br><br>**Exhibit "2" ¶20.** |
| 28. | The *Dior Counterclaim* urged that "[Universal] continued to advertise and offer under the Infringing Marks skin care products and related goods and services that are identical and/or closely related to those offered by Dior and under its J'ADORE Marks." | Segev Decl. ¶20;<br><br>**Exhibit "2" ¶24.** |
| 29. | Dior claimed that Universal "is marketing, advertising and promoting its line of skin care products and related goods under the Infringing Marks through a website associated with the domain name, adorecosmetics.com." | Segev Decl. ¶21;<br><br>**Exhibit "2" ¶25.** |
| 30. | The counterclaim also asserted that "[t]he use by Handicraft of the | Segev Decl. ¶22; |

| | | |
|---|---|---|
| | Infringing Marks unfairly and unlawfully wrests from Dior control over its J'ADORE Marks and reputation and is unjustly enriching Handicraft." | Exhibit "2" ¶29. |
| 31. | The counterclaim also stated that Handicraft has "registered, trafficked in, and/or used the adorecosmetics.com domain name with the bad faith intent to profit from the J'ADORE Marks" [and] and "the adorecosmetics.com domain name has been used by Handicraft with the bad faith intent to reap the benefit of the goodwill in the J'ADORE Marks, to divert consumers to the adorecomsetics.com domain name for their own commercial gain, and to otherwise profit from unauthorized use of the J'ADORE Marks." | Segev Decl. ¶23; Exhibit "2" ¶46. |
| 32. | The counterclaim alleged that "Handicraft's use of the Infringing Marks in connection with skin care products and related goods and services is likely to confuse the public as to the origin, source or sponsorship of Handicraft's goods and services, or to cause mistake or to deceive the public into believing that Handicraft's goods and services are authorized, sponsored, endorsed by, licensed by, or affiliated with Dior, in violation of Dior's rights in the J'ADORE Marks under the common law of the state of Florida. | Segev Decl. ¶24; Exhibit "2" ¶51. |
| 33. | The counterclaim further stated, "By misappropriating and trading upon the goodwill and business reputation represented by the J'ADORE Marks, Handicraft has been and, unless enjoined by this Court, will continue to be unjustly enriched at Dior's expense." | Segev Decl. ¶25; Exhibit "2" ¶52. |
| 34. | To remedy the conduct alleged, including Count II for Lanham Act violations and the Florida common law unfair competition Count IV, Dior seeks injunctive relief as part of the prayer against Universal: | Segev Decl. ¶26; Exhibit "2." |

| | | |
|---|---|---|
| | (a) . . . in connection with the advertising, promotion, manufacture . . . displaying . . . or offering for sale of skin care, cosmetic or fragrance products or in connection with any related goods or services, including but not limited to retail store services; <br><br> (b) using the J'ADORE Marks . . . or any other simulation, reproduction, copy, colorable imitation or confusingly similar variation of the mark J'ADORE . . . in connection with the advertising, promotion . . . displaying . . . or offering for sale any skin care, cosmetic or fragrance products, and any related goods or services, including but not limited to retail store services; <br><br> (d) conducting any activities in the United States that relate to, refer to or concern the advertising, promotion, . . . displaying . . . offering for sale of skin care, cosmetic or fragrance products, or related goods or services . . . that includes J'ADORE in whole or in part. . . . <br><br> (f) engaging in any other activity constituting unfair competition with Dior . . . . (i) using any domain name or metatag that includes in whole or in part the term 'J'ADORE or 'ADORE' or any formative thereof in connection with a web site that advertises, promotes, markets, displays, . . . offers for sale or otherwise refers to skin care, cosmetic or fragrance products, or any related goods or services . . . ." | |
| 35. | Dior also sought specifically "destruction of 'promotional and marketing materials, advertising . . .'" | Segev Decl. ¶27; <br><br> **Exhibit "2."** |
| | **VOGUE'S NOTICE TO HARTFORD AND ITS DENIAL OF COVERAGE** | |
| 36. | In May of 2013, following the filing of the *Dior Counterclaim*, Universal promptly tendered to Hartford. Following completion of its review of the facts alleged in the counterclaim, Hartford denied a defense in its June 6, 2013 letter. | Segev Decl. ¶28; <br><br> **Exhibit "3."** |
| 37. | The June 6, 2013 letter claimed that: <br><br> a) there was "no personal and advertising injury" | Segev Decl. ¶29; <br><br> **Exhibit "3" p. 2.** |

| | | |
|---|---|---|
| | (a) . . . in connection with the advertising, promotion, manufacture . . . displaying . . . or offering for sale of skin care, cosmetic or fragrance products or in connection with any related goods or services, including but not limited to retail store services; (b) using the J'ADORE Marks . . . or any other simulation, reproduction, copy, colorable imitation or confusingly similar variation of the mark J'ADORE . . . in connection with the advertising, promotion . . . displaying . . . or offering for sale any skin care, cosmetic or fragrance products, and any related goods or services, including but not limited to retail store services; (d) conducting any activities in the United States that relate to, refer to or concern the advertising, promotion, . . . displaying . . . offering for sale of skin care, cosmetic or fragrance products, or related goods or services . . . that includes J'ADORE in whole or in part. . . . (f) engaging in any other activity constituting unfair competition with Dior . . . . (i) using any domain name or metatag that includes in whole or in part the term 'J'ADORE or 'ADORE' or any formative thereof in connection with a web site that advertises, promotes, markets, displays, . . . offers for sale or otherwise refers to skin care, cosmetic or fragrance products, or any related goods or services . . . ." | |
| 35. | Dior also sought specifically "destruction of 'promotional and marketing materials, advertising . . ." | Segev Decl. ¶27; **Exhibit "2."** |
| **VOGUE'S NOTICE TO HARTFORD AND ITS DENIAL OF COVERAGE** | | |
| 36. | In May of 2013, following the filing of the *Dior Counterclaim*, Universal promptly tendered to Hartford. Following completion of its review of the facts alleged in the counterclaim, Hartford denied a defense in its June 6, 2013 letter. | Segev Decl. ¶28; **Exhibit "3."** |
| 37. | The June 6, 2013 letter claimed that:<br>a) there was "no personal and advertising injury" | Segev Decl. ¶29; **Exhibit "3" p. 2.** |

| | | |
|---|---|---|
| | coverage following the enumeration of all the listed offenses (a) through (h); <br><br> b) "it is apparent that the counterclaims did not seek any damages resulting from the commission of any of these enumerated offenses," and; <br><br> c) "the facts alleged in the complaint make clear that the only damages sought are as a result of trademark infringement." | |
| 38. | The denial letter also referenced intellectual property exclusion p. (7). | Segev Decl. ¶30; <br><br> **Exhibit "3."** |
| 39. | The denial letter also relied on exclusion p. (10) and stated: "This insurance does not apply to 'personal and advertising injury' arising out of the unauthorized use of another's name or product in your email address, domain name or metatags, or any other similar tactics to mislead another's potential customers." | Segev Decl. ¶31; <br><br> **Exhibit "3."** |
| | **SETTLEMENT OF UNDERLYING SUIT** | |
| 40. | Following the denial of a defense in the underlying action was resolved by a co-existence agreement between the parties about the payment of any damages leaving only the issue of unpaid defense fees from the initiation of the counterclaim suit outstanding. | Segev Decl. ¶32; <br><br> **Exhibit "4."** |
| 41. | The district court dismissed the parties' complaint and counterclaim with prejudice retaining jurisdiction to address compliance with the terms of the Settlement Agreement. | Segev Decl,. ¶33; <br><br> **Exhibit "5."** |

Dated: February 20, 2014               Respectfully submitted,

     /s/ David H. Charlip
David H. Charlip, Esq.
CHARLIP LAW GROUP L.C.
17501 Biscayne Boulevard, Suite 510
Aventura, Florida 33160
Telephone: (305) 354-9313
Facsimile: (305) 354-9314
dcharlip@charliplawgroup.com

David A. Gauntlett, Esq. *[Pro Hac Vice]*
GAUNTLETT & ASSOCIATES
18400 Von Karman, Suite 300
Irvine, California 92612
Telephone: (949) 553-1010
Facsimile: (949) 553-2050
info@gauntlettlaw.com

Attorneys for Plaintiff Universal Handicraft, Inc.
dba Deep Sea Cosmetics

## Certificate of Service

I HEREBY CERTIFY that this document(s) was filed through the ECF system, sent electronically and paper copies served via Federal Express on February 20, 2014, on counsel for parties of record on the Service List below.

     /s/ David H. Charlip

## SERVICE LIST

Sina Bahadoran, Esq.
HINSHAW & CULBERTSON, LLP
2525 Ponce de Leon Boulevard, 4th Floor
Coral Gables, Florida 33134-6044
Telephone: (305) 358-7747
Facsimile: (305) 577-1063
sbahadoran@hinshawlaw.com

Attorneys for Defendant
Hartford Casualty Insurance Company